IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 23-191 |
| ) | Judge Nora Barry Fischer |
| TARIQ LONG, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

I.  INTRODUCTION

In this case, Defendant Tariq Long is charged with one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Docket No. 3). Presently before the Court is Defendant's Motion for *Faretta Hearing* in which Defendant seeks to waive his right to counsel and represent himself in this case.[1] (Docket No. 54). The Government agreed that a hearing was necessary but did not take a position on Defendant's request to represent himself. (Docket No. 56). The Court conducted the requested *Faretta* hearing on September 24, 2024 and has now reviewed the official transcript of those proceedings. (Docket Nos. 64; 67). After careful consideration of the parties' positions, Defendant's responses to the Court's inquiries, and for the following reasons, Defendant's Motion [54] and his request to proceed pro se is GRANTED.

II.  BACKGROUND

The Indictment alleges that Defendant has previously been convicted of two felony offenses. (Docket No. 3). At the hearing, Defendant did not dispute that he had previously been convicted of a felony. (Docket No. 67 at 32). On or around May 23, 2024, Defendant possessed a

---

[1] Defendant's Motion to Withdraw Pleading and Vacate Related Deadline (Docket No. 52) remains pending before the Court and the Court will address that Motion in a separate order.

1

Springfield Armory .40 caliber pistol and Blazer .40 caliber ammunition in violation of 18 U.S.C. § 922(g)(1). (Docket No. 3). The penalties for violating 18 U.S.C. § 922(g)(1) include a term of incarceration up to fifteen years; a term of supervised release up to three years; a special assessment of $100; and a fine not to exceed $250,000. *See* 18 U.S.C § 924(a)(8).

Defendant has already had several attorneys appointed to represent him in the instant case. At an initial appearance before Magistrate Judge Maureen P. Kelly on November 30, 2023, Defendant requested the appointment of counsel and was assigned then Assistant Federal Public Defender Christopher Brown to represent him. (Docket Nos. 17, 19). After Attorney Brown assumed the role of Magistrate Judge, Assistant Federal Public Defenders Summer Akhtar and Jeffrey Carr entered appearances on Defendant's behalf. (Docket No. 36). In July of 2024, Mr. Carr and Ms. Akhtar moved to withdraw as counsel because they had an actual conflict of interest and could no longer represent Defendant. (Docket No. 37). The Court then appointed Martin Dietz to represent Defendant. (Docket No. 43). However, he, too, was subsequently forced to withdraw due to an actual conflict of interest. (Docket No. 48). Finally, Mr. Schorr was appointed to represent Defendant on August 19, 2024 and has represented him since that time.[2] (Docket No. 47).

While represented by counsel, Defendant has been granted several extensions for the filing of pretrial motions. (Docket Nos. 25, 31, 33, 35). Most recently, on August 27, 2024, Mr. Schorr filed a motion to extend the deadline to file pretrial motions, which the Court promptly granted and extended the deadline to October 28, 2024 because he had only recently been appointed within the past week. (Docket Nos. 49, 51). Three days later, on August 30, 2024, Mr. Schorr filed a

---

[2]    The Court notes Mr. Schorr is a highly qualified attorney with significant experience handling federal criminal matters. He was admitted to the Pennsylvania Bar in 1991; has been on the CJA Panel for the Western District of Pennsylvania for more than twenty years; and has appeared before this Court in numerous prior criminal matters. *See United States v. Stevey*, No. Crim. 05-232-2, 2014 WL 1235801, at *5 (W.D. Pa. Mar. 25, 2014).

Motion to Withdraw Pleading and Vacate Related Deadlines (Docket No. 52) and the instant Motion for *Faretta* Hearing (Docket No. 54), along with a request for a status conference. Thereafter, the Court ordered the Government to respond to Defendant's Motions and Defendant to reply to the Government's Response. (Docket Nos. 55, 57). Upon consideration of Defendant's Motions, the Government's Response, and Defendant's Reply, the Court scheduled a status conference and hearing, which was held on September 24, 2024. (Docket No. 59).

At the outset of the proceeding, the Court obtained background information from Defendant and established that he was competent to participate. (Docket No. 67 at 9). Defendant is 33 years old. (*Id*. at 4). He is currently in custody at the Allegheny County Jail pending a trial on state charges arising from a separate incident.[3] (*Id.* at 19). Defendant has completed high school and one trimester of criminal justice studies at Mercyhurst Northeast. (*Id.* at 4). However, he did not have a transcript of his college courses and was unable to offer more details of his studies. (*Id*. at 26). He has no other educational or vocational training. (*Id*. at 4, 27). Defendant has never been treated for drug or alcohol abuse, nor was he taking any medication which would have affected his ability to understand the proceedings. (*Id.* at 6, 8). While he has not been diagnosed with any mental or physical conditions, he recently signed up to see a counselor at the Allegheny County Jail. (*Id.* at 5–6). At the hearing, Defense counsel asserted that his client was competent to participate meaningfully. (*Id.* at 8). Similarly, the Court observed Defendant's demeanor and responses during the colloquy and concluded that he understood the proceedings. (*Id.* at 9).

In the instant Motion, defense counsel proffered that Defendant wished to proceed pro se. (Docket No. 54). As a result, the Court granted Defendant's Motion to the extent that it conducted an extensive *Faretta* colloquy with Defendant, including an *in camera* examination into his desire

---

[3] Defendant's state trial is currently scheduled for October 28, 2024 and he is represented by attorney Michael Waltman. (*Id.* at 19–20).

3

to proceed pro se. (Docket No. 67 at 22–48). From the Court's perspective, Defendant consistently maintained his position throughout the status conference and colloquy. (*Id.*). In response to a series of questions from the Court, Defendant denied having ever testified in court, as a party, witness, or victim. (*Id.* at 27). Similarly, he has never testified in a deposition or hearing. (*Id.* at 28). Although he does not have a personal attorney, he reported that his cousin is an attorney and it appears that she works for the Allegheny County Public Defender's Office. (*Id.* at 28–29; 30–31). He has never worked as a paralegal or legal assistant. (*Id.* at 29). He told the Court that he previously represented himself in a criminal case in City Court on a charge of obstructing the administration of law. (*Id.*). He said that he did not testify in that case but presented argument to a Judge, whose name he did not recall. (*Id.* at 30). Defendant explained that the obstructing charge was nolle prossed because he was charged with another case. (*Id.*). He did not provide details of the other case.

The Court warned Defendant that if he represented himself, he would be responsible for managing all aspects of his case. (*Id.* at 32). Defendant acknowledged that he would have to meet all the Court's deadlines and would be required to prepare pretrial and post-trial motions, witness lists, and exhibit lists. (*Id.* at 32–33, 37). He would also have to propose jury instructions, conduct voir dire, prepare any joint stipulations and exhibits, present opening and closing statements, examine and cross-examine witnesses, rebut evidence, and raise objections. (*Id.* at 33–34; 37–38). Specifically, while incarcerated, Defendant will struggle to retain and present experts in his defense. (*Id.* at 37). Similarly, he will struggle to cross-examine any Government experts. (*Id.*). The Court advised Defendant that he would be expected to adhere to all applicable rules, namely the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the Local Rules for the U.S. District Court for the Western District of Pennsylvania, and this Court's Practices and

4

Procedures. (*Id.* at 33, 37). The Court further cautioned Defendant that technical rules were "not going to be relaxed" for his benefit, emphasizing that he would not be permitted to tell the jury about evidence that the Court concludes is inadmissible. (*Id.* at 36–38). Accordingly, the Court told Defendant to be prepared to examine witnesses during trial as delays would not be permitted. (*Id.* at 37).

It appeared to the Court that Defendant understood some basic legal terms, such as "civil case," "felon," and "precedent." (*Id.* at 31–32). Additionally, he had already reviewed the statute under which he has been charged, some potentially relevant caselaw, as well as the U.S. Sentencing Guidelines and its amendments. (*Id.* at 31–32, 34). The Court clarified that the U.S. Sentencing Guidelines are only advisory. (*Id.* at 46–47). Defendant has some knowledge of the Federal Rules of Criminal Procedure and the Federal Rules of Evidence. (*Id.* at 34). However, Defendant did not know what "motion in limine" meant, was unfamiliar with possible defenses, and tried to "adopt" a motion from another case. (*Id.* at 33, 53–54). Overall, Defendant displayed only a rudimentary grasp of substantive law and procedure.

The Court offered its opinion that a trained lawyer would be better prepared to examine witnesses, offer defenses, prepare relevant documents, contact witnesses, gather evidence, and investigate and handle Defendant's case, especially since he remains incarcerated. (*Id.* at 39–40). Defendant admitted that a trained lawyer would not be hampered by a lack of knowledge for the relevant procedural rules and substantive laws and may be aware of ways to defend against the charged conduct that might not occur to Defendant. (*Id.*). In any event, neither the Court nor stand-by counsel will advise Defendant how to try his case if he proceeds pro se. (*Id.* at 41, 48). More than once during the colloquy, the Court notified Defendant of the potential consequences of a guilty verdict. (*Id.* at 9, 41–43). Defendant acknowledged each of the Court's warnings, but

consistent with his position throughout the proceeding, Defendant was "certain" in his decision, stating he "absolutely" wished to represent himself, declining the Court's offer of additional time to consider his decision. (*Id.* at 44–45).

Defendant also raised two logistical concerns with the Court—the amount of time that he has to review discovery and alleged troubles with his mail service. (*Id.* at 16–17). Defendant claimed that he did not trust the mail system and although he had handwritten a series of pretrial motions, he did not mail them to the Clerk of Court. (*Id.* at 35). (Mr. Schorr had not had an opportunity to review these motions.). (*Id.*). Defendant agreed that an attorney could review and likely improve these motions but insisted that they be filed as he had prepared them. (*Id.* at 44). Since Defendant remained represented by counsel, the Court declined to permit the filing of his pro se motions. (*Id.* at 52). However, the Court agreed to hold the motions in abeyance pending a ruling on the instant motion.[4] (*Id.*). Following the hearing, the Court ordered production of the transcript and has now reviewed same. (Docket No. 67). Hence, Defendant's motion is now ripe for disposition.

III. LEGAL STANDARD

"It is well established that the Sixth Amendment protects a defendant's right to have counsel for his defense, and his right to refuse counsel and represent himself." *Faretta v. California*, 422 U.S. 806, 814 (1975); *United States v. Stubbs*, 281 F.3d 109, 116 (3d Cir. 2002). "A defendant who wishes to represent himself 'must be allowed to make that choice, even if it works ultimately to his detriment.'" *See United States v. Taylor*, 21 F.4th 94, 105 (3d Cir. 2021); *see also United States v. Jones*, 452 F.3d 223, 228 (3d Cir. 2006) (quoting *United States v. Peppers*, 302 F.3d 120, 130 (3d Cir. 2002)).

---

4     The Court will address the status of Defendant's pro se motions in a separate order.

However, before allowing a defendant to represent himself pro se, "the trial court [bears] the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *See Taylor*, 21 F.4th at 105. This Court must engage in a "penetrating and comprehensive examination of all the circumstances" to determine whether the "defendant: (1) has clearly and unequivocally asserted his desire to represent himself; (2) understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved; and (3) is competent to stand trial." *See Taylor*, 21 F.4th at 100; *Jones*, 452 F.3d at 228–29 (quoting *Peppers*, 302 F.3d at 132, 134).

IV.   DISCUSSION

The Court must carefully conduct a thorough inquiry because "whenever a defendant invokes his right to self-representation, a district court risks violating the defendant's constitutional rights whether or not it permits the defendant to proceed pro se." *See Taylor*, 21 F.4th at 105. Accordingly, the Court engaged in a comprehensive examination of the circumstances surrounding Defendant's desire to proceed pro se, including an *in camera* review of the reasons for his request. *See Gov't of Virgin Islands v. Charles*, 72 F.3d 401, 410 (3d Cir. 1995) (citing *Gov't of Virgin Islands v. James*, 934 F.2d 468, 470–71 (3d Cir. 1991)) ("First, the court must make an inquiry regarding the defendant's reasons for the request."). In addition to asking those questions included in the framework suggested by the Third Circuit in *Peppers*, the Court posed several additional questions to fully apprise itself of Defendant's understanding of the rights that he was waiving. *See Peppers*, 302 F.3d at 136.

In this Court's estimation, the first factor outlined in the caselaw has been met as Defendant clearly and unequivocally asserted his desire to represent himself multiple times both during the

*in camera* session and throughout the *Faretta* colloquy. *See Taylor*, 21 F.4th at 100. He also noted that he did not have a conflict with Mr. Schorr and was willing to work with him as stand-by counsel. The third factor is also established on this record because after observing Defendant's demeanor and responses, the Court believes that he is competent to stand trial. *See Hummel v. Rosemeyer*, 564 F.3d 290 (3d Cir. 2009) ("To be found competent to stand trial, a defendant must 'have a sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him.'"). It also appears that he is sufficiently educated, was articulate in his responses, and is not suffering from any mental illness or substance abuse issues. *See id*.

Consequently, the main issue for the Court to decide is whether Defendant exhibited a sufficient understanding of the charge against him, the potential penalties and defenses, other technical problems, and a general understanding of the risks involved with representing himself. *See Peppers*, 302 F.3d at 132. During the examination, the Court cautioned Defendant that a trained lawyer would be better prepared to examine witnesses, have access to more resources, such as an investigator, and be able to gather evidence more easily than Defendant. The Court emphasized the difficulties Defendant faces due to his incarceration and inability to perform as effectively as someone who is not incarcerated. *See United States v. Schwartz*, 925 F. Supp. 2d 663, 678 (E.D. Pa. 2013). Defendant acknowledged that he understood each admonishment and the challenges of self-representation when he raised logistical issues, such as the amount of time he is able to review discovery under the jail's procedures. In addition to these logistical issues, the Court repeatedly advised him of the significant penalties that he faces if he is convicted. *See Peppers*, 302 F.3d 120 (requiring defendant understand the range of possible punishments for

waiver to be knowing). At every opportunity, Defendant affirmed that he understood the potential penalties and exhibited an understanding of the seriousness of those penalties.

Even after the Court's numerous warnings about the disadvantages and difficulties of self-representation, Defendant resoundingly answered that he "absolutely" wanted to proceed pro se, demonstrating his determination to represent himself. *See Schwartz*, 925 F. Supp. 2d at 678. Nevertheless, the Court repeated the familiar maxim to Defendant: "When someone represents themselves, it is said that they have a fool for a client" and advised Defendant that the Court thought that his preferred course of action is unwise. *See Stubbs*, 281 F.3d at 120. Despite this additional warning, Defendant declined the Court's offer of additional time to consult with family and friends about this important issue.[5]

Throughout the colloquy, Defendant remained strongly committed to representing himself. In light of Defendant's recognition of the significant penalties, the Court's lengthy description of the pitfalls of self-representation, and Defendant's responses to the Court's questions during the *Faretta* colloquy, the Court concludes that Defendant "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved" in proceeding pro se. *See Peppers*, 302 F.3d at 132 (quoting *Charles*, 72 F.3d at 404). Based upon the Court's observations during the *Faretta* colloquy, Defendant has knowingly and voluntarily waived his right to counsel and may proceed pro se.

While the Court will grant Defendant's Motion, in its judgment, Defendant's decision to represent himself is ill-advised. Defendant has limited college education, amounting to one trimester in criminal justice studies but is unable to remember any of his classes. While

---

[5] Defendant's family and friends, including Darryl Craig and Kymberley Mullen, were in attendance throughout the proceeding. (Docket No. 67 at 2).

9

incarcerated at the Allegheny County Jail, Defendant has seen a counselor but did not provide a diagnosis to the Court. Related to his incarceration, Defendant complained to this Court that he received inadequate time to review discovery and experienced trouble sending and receiving his mail – two issues which could exacerbate his ability to adequately represent himself.

Perhaps, most importantly, Defendant lacks knowledge about the relevant procedural rules and substantive law, including possible defenses to the charged conduct. Defendant did not understand "motion in limine" and believes adopting motions and briefs from other cases is proper without an appropriate analysis of the facts and circumstances of that case. Similarly, he is unfamiliar with the Local Rules and this Court's Practices and Procedures.[6]

Yet, these concerns are not sufficient grounds for this Court to prevent Defendant from waiving his right to counsel. *See Faretta*, 422 U.S. at 834–35 ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation…."). Altogether, Defendant is ill-equipped and faces substantial obstacles to successfully proceed as his own counsel. Simply put, this Court believes Defendant's decision to forgo counsel is determinantal to his interests, but the decision remains his own. *See Peppers*, 302 F.3d at 130 (quoting *Faretta*, 422 U.S. at 820) ("Thus, a defendant who chooses to represent himself must be allowed to make that choice, even it works 'ultimately to his own detriment.'").

While the Court notes its reservations, it concludes that it has little choice but to allow Defendant to represent himself because he has knowingly and voluntarily waived his right to counsel. *See Cassano v. Shoop*, 1 F.4th 458 (6th Cir. 2021) (reversing denial of request to proceed pro se because trial court rested decision on defendant's "best interest"); *see also United States v.*

---

[6] After the hearing, Mr. Schorr provided Defendant with copies of this Court's Local Rules and Practices and Procedures. (Docket No. 71).

*Dougherty*, 473 F.2d 1113, 1128 (D.C. Cir. 1972) ("A defendant has the moral right to stand alone in his hour of trial. The denial of that right is not to be redeemed through the prior estimate of someone else that the practical position of the defendant will be enhanced through representation by another…."). Accordingly, the Court holds that Defendant has knowingly and voluntarily waived his right to counsel and may proceed pro se. With that said, the Court will appoint him stand-by counsel and as Defendant expressed no issues with Mr. Schorr taking on that role, he will be appointed as stand-by counsel.

V.   CONCLUSION

Based on the foregoing, Defendant's Motion for *Faretta* Hearing [54] and his request to proceed pro se is GRANTED. An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: October 25, 2024

cc/ecf: All counsel of record

cc:   Tariq Long
      DOC #173107
      Allegheny County Jail
      950 Second Avenue
      Pittsburgh, PA 15219
      (via first class mail)